## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

KIM D. T.,                              )
                                        )
            Plaintiff,              )
                                        )
v.                                      )      **Case No. 20-CV-383-CDL**
                                        )
KILOLO KIJAKAZI,[1]                     )
**Acting Commissioner of the**         )
**Social Security Administration,**    )
                                        )
            Defendant.              )

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision denying benefits.

## I.    Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any

---

[1]     Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Procedural History

Plaintiff filed an application for social security disabled widow's benefits on October 10, 2018. (R. 164). Plaintiff alleges she became disabled due to trigeminal neuralgia, social anxiety disorder, morbid obesity, type II diabetes, and neuropathy in her feet. (R. 181). Plaintiff was fifty-two years old on the alleged amended onset date of

2

August 21, 2018.[2]  Prior to the amended onset date, Plaintiff worked as a customer service representative.  The Commissioner denied Plaintiff's application on initial review and on reconsideration.  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing on December 9, 2019.  Testimony was given by Plaintiff and Vocational Expert (VE) Amanda Armstrong.  On January 22, 2020, the ALJ issued a decision denying disability benefits. (R. 25).  On June 4, 2020, the Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision the agency's final decision.  (R. 1).  Accordingly, the Court has jurisdiction to review the ALJ's January 22, 2020 decision under 42 U.S.C. § 405(g).

## III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404,

---

[2]      Plaintiff's original application alleged an onset date of January 1, 2012, but the onset date was amended to August 21, 2018. (R. 176).

subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

## A.   Step One

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of August 21, 2018.  (R. 17).

## B.   Step Two

The ALJ determined that Plaintiff has the following severe impairments: diabetes mellitus, hypertension, and obesity.  (R. 18).  The ALJ also found that Plaintiff's allegations of trigeminal myalgia [sic] and "brain fog" from medications are not supported by the medical record and are non-severe.  *Id.*

The ALJ found that Plaintiff's mental impairments of depression, panic disorder with agoraphobia, bereavement, and social anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the ability to perform basic mental work activities and are non-severe.  *Id.*  Regarding Plaintiff's mental impairments, the ALJ addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. (R. 20-21; *see* 20 C.F.R. § 404 Subpt. P App'x 1). To satisfy the paragraph B criteria, a claimant's

4

mental impairments must result in at least one extreme or two marked limitations in four areas of functioning. 20 C.F.R. § 404 Subpt. P App'x 1. A marked limitation means that the claimant's functioning in the area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.* An extreme limitation means the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* Here, the ALJ found that Plaintiff has a **mild** limitation in understanding, remembering, or applying information; a **mild** limitation in interacting with others; a **mild** limitation in concentrating, persisting, or maintaining pace; and a **mild** limitation in adapting or managing oneself. (R. 20-21). Because Plaintiff does not have at least one extreme or two or more marked limitations, the paragraph B criteria are not satisfied. (R. 21).

## C.    Step Three

The ALJ found that Plaintiff's physical and mental impairments do not meet or equal the criteria for any listing. (R. 21). The ALJ evaluated Plaintiff's diabetes mellitus under the criteria set forth in S.S.R. 14-2p: *Titles II and XVI: Evaluating of Diabetes Mellitus* (June 2, 2014), as there is no specific listing for diabetes mellitus. *Id.* The ALJ evaluated Plaintiff's obesity under criteria set forth in S.S.R. 02-1p: *Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity* (Sept. 12, 2002), as there is no listing for obesity. *Id.* As there is not a specific listing for hypertension, the ALJ considered all evidence of heart disease, stroke, or other cardiovascular complications in regards to the Plaintiff's hypertension. *Id.* The ALJ also considered Plaintiff's hypertension in connection with Listings 1.00 et seq., the musculoskeletal listing, 2.00 et seq., the visual

5

listings, 3.00 et seq., the respiratory listing, 4.00 et seq., the cardiovascular listing, 6.00 et seq., the genitourinary listings, and 12.00 et seq., the brain function.  *Id.*

In accordance with these findings, the ALJ proceeded to step four.

### D.    Step Four

The ALJ found that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant can occasionally lift and/or carry 10 pounds, frequently up to 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, and sit at least 6 hours in an 8-hour workday.

(R. 21-22).  The ALJ found that Plaintiff had past relevant work as a customer service representative, which is categorized as sedentary exertion level, semi-skilled, with Specific Vocational Preparation (SVP) level 4. (R. 24).  Citing the VE's testimony as to a hypothetical person with Plaintiff's RFC, the ALJ found that Plaintiff would be able to perform her past work as a customer service representative, both as actually and as generally performed. (R. 25).  Accordingly, the ALJ found Plaintiff not disabled at step four.  *Id.*

## IV.    Discussion

### A.    Introduction

Plaintiff argues that the ALJ committed reversible error by failing to properly evaluate the medical opinion evidence.  Plaintiff also argues that the ALJ's findings at step four were not supported by substantial evidence. The Commissioner argues that the ALJ properly evaluated the medical opinion evidence according to the new regulations and the

ALJ's findings at step four regarding Plaintiff's substantial gainful activity are supported by substantial evidence.

**B.      Dr. Jennings**

Plaintiff argues the ALJ erred in his evaluation of the opinion of Plaintiff's treating medical provider, Beau Jennings, D.O.  Specifically, Plaintiff argues the ALJ selectively ignored evidence that supports the limitations assessed by Dr. Jennings.   The ALJ's decision must articulate how he considered the medical opinions or prior administrative medical findings from each medical source. 20 C.F.R. § 404.1520c(b)(1).[3] The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how he considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id*. § 404.1520c(b)(2).[4]

**i.      Lift/Carry/Hand Manipulation Limitations**

As noted by the ALJ, Dr. Jennings opined that Plaintiff could only lift or carry less than ten pounds and assessed manipulative hand limitations. (R. 19) (citing Exhibit 9F, page 1). However, the ALJ found these limitations were inconsistent with the medical evidence in the record. *Id.*  For instance, the ALJ noted that a physical examination by Dr. Jennings on October 16, 2018 showed Plaintiff displayed a normal range of motion and her

---

[3]      For claims, such as this one, filed on or after March 27, 2017, the Commissioner does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a).

[4]      The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c).

diabetes mellitus was well-controlled.  (R. 23 (citing Exhibit 2F, pages 1, 5)).  On March 22, 2019, Plaintiff reported to Dr. Jennings that she had no arthralgia.  (R. 19 (citing Exhibit 6F, page 4)).  The ALJ cited the consultative examination (CE) by Dragos Vesbianu, M.D. dated December 19, 2018, where a physical examination revealed "grip strength equal bilaterally and rated 5/5."  *Id.* (citing Exhibit 4F, page 2).  The physical examination also revealed "no muscle contracture and no pain on extremity range of motion."  *Id.*

Plaintiff suggests that the ALJ selectively disregarded evidence that would support the limitations assessed by Dr. Jennings.  However, Plaintiff fails to identify any specific evidence that the ALJ failed to consider regarding the lift/carry/hand manipulation limitations.  After reviewing the record, the undersigned has not located additional substantial evidence in the record that the ALJ failed to address that is probative of the lift/carry/hand manipulation limitations.  Further, the ALJ's RFC determination regarding Plaintiff's lift/carry limitations is *more* restrictive than the lift and carry limitations opined by the state agency physicians. (*See* R. 58-59, 73-74).

The ALJ's decision indicates that he weighed the opinion of Dr. Jennings regarding Plaintiff's lift/carry/hand manipulation limitations and concluded that it does not warrant additional limitations in Plaintiff's RFC. The ALJ supported this conclusion with reference to specific evidence in the record.  Nothing further is required.  Further, even if the evidence could support a different finding, the Court cannot displace the agency's choice between two fairly conflicting views. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007). Plaintiff's argument simply invites the Court to improperly re-weigh the evidence. *See Noreja*, 952 F.3d at 1177; *see also Lax*, 489 F.3d at 1084.  Accordingly, substantial

evidence supports the ALJ's decision to discount Dr. Jennings' opinion regarding Plaintiff's limitations for lifting, carrying, and hand manipulations.

### ii.   Trigeminal Neuralgia/Cognitive Impairments from Medications

As noted by the ALJ, Plaintiff alleged her ability to work was limited by her trigeminal neuralgia and "brain fog" (i.e., intermittent cognitive lapses) caused by her medications.  (R. 18).  The ALJ cited several instances from the record where Plaintiff reported symptoms of trigeminal neuralgia and brain fog.  (*See* R. 18, 22, 23, 24).

Dr. Jennings opined that Plaintiff could not work, even with functional limitations, due to trigeminal neuralgia, anxiety around people, diabetic neuropathy, obesity, and cognitive impairment from medications.  (R. 19).  Dr. Jennings also opined that Plaintiff's medications affected her ability to concentrate (brain fog) and consequently limited her to simple tasks only. (R. 19 (citing Exhibit 9F, page 3)).  However, the ALJ found that Dr. Jennings' opinion was based on Plaintiff's subjective complaints rather than any objective physical findings. *Id.*  Further, the ALJ found that the objective medical evidence is inconsistent with Plaintiff's complaints of trigeminal neuralgia and brain fog.

For instance, the ALJ cited the October 16, 2018 office visit with her primary care physician, where Plaintiff "displayed a normal mood and affect and normal behavior."  (R. 18 (citing Exhibit 2F, page 3)).  The ALJ cited the internal CE, where Dr. Vesbianu "found the [Plaintiff] was alert and oriented times 3," she "had normal mentation and thought process," and her "mood, judgement, and affect were all within normal limits."  (R. 19 (citing Exhibit 4F, page 2)). The ALJ found that in "every objective physical examination detailed in the record, [Plaintiff's] psychological condition, mood, affect, mentation, and

9

behavior, were found to be normal, appropriate, alert, cooperative, or oriented." *Id.* (citations omitted).

The ALJ also discussed the internal CE report of Dr. Vesbianu dated December 19, 2018, where Plaintiff reported her trigeminal neuralgia "was so bad sometimes that she could not talk." (R. 18).  Dr. Vesbianu assessed Plaintiff with trigeminal neuralgia, poorly controlled, although no objective findings were made.  *Id.*  However, the physical examination showed that Plaintiff "was not in any acute distress," there was "no pain was noted with passive range of movement," and "no muscle atrophy or muscle contracture." *Id.*  Most importantly, the ALJ noted the physical examination showed that Plaintiff's "conversational tone was normal, and her speech was intelligible and consistent with her age and history." *Id.*  The ALJ found that "[t]his certainly appeared inconsistent with her initial allegations of a speech impairment." *Id.* (citing Exhibit 4F, page 2).  The ALJ acknowledged Plaintiff's hearing testimony where she alleged severe trigeminal neuralgia, but noted she was able to "testify at length without any difficulty speaking coherently." (R. 22).

Accordingly, substantial evidence supports the ALJ's decision to discount Dr. Jennings' opinion regarding the limitations for Plaintiff's trigeminal neuralgia and brain fog. The ALJ's decision indicates that he weighed the opinion of Dr. Jennings regarding Plaintiff's trigeminal neuralgia and brain fog and concluded that it does not warrant additional limitations in Plaintiff's RFC. The ALJ supported this conclusion with reference to specific evidence in the record. Nothing further is required.  Plaintiff's argument simply

invites the Court to improperly re-weigh the evidence. *See Noreja*, 952 F.3d at 1177; *see also Lax*, 489 F.3d at 1084.

### iii.   Walking/Standing/Sitting/Positional Changes

As noted by the ALJ, Dr. Jennings opined in a medical source statement (MSS) that Plaintiff could only (1) stand and/or walk for fifteen minutes at a time, and for less than four hours during an eight-hour workday and (2) sit for two hours at a time, and for a total of at least six hours in a workday.  (R. 19 (citing Exhibit 9F, page 1)).  Dr. Jennings also opined that Plaintiff required positional changes, including sitting frequently and elevating her legs every two hours for fifteen minutes.  *Id*.

The ALJ found that the medical source statement of Dr. Jennings is "not at all persuasive" because, "[a]fter making a detailed comparison between [Dr. Jennings'] assessed limitations and the record as a whole, the undersigned finds that … Dr. Jennings' assessed limitations are inconsistent with and not supported by even his own medical records."  *Id*. The ALJ further found the extreme limitations assessed were based on the Plaintiff's subjective complaints and there was no objective support for those limitations found "anywhere in the record."  *Id*.

The ALJ relied on Plaintiff's own statements, as well as objective medical evidence in the record, in rejecting the limitations assessed in Dr. Jennings' MSS.  For example, on October 17, 2019, Plaintiff reported her "edema was improved with Lasix" and she had "only mild dyspnea on exertion."  *Id*. (citing Exhibit 8F, page 1). A physical examination showed Plaintiff was well developed, with a normal range of musculoskeletal motion," with "no deformity, and no lower extremity edema." *Id.* (citing *Id.* at 4).  The ALJ noted a

11

CE "revealed she was able to move about the room with a normal gain with slow speed, normal safety, and stability." *Id*. (citing Exhibit 4F, page 2). Additionally, Plaintiff's testimony was at odds with some of Dr. Jennings' most stringent limitations. Plaintiff stated that, although she has to get up and move periodically, she "can sit for longer periods of time . . . probably an hour or more." (R. 43-44). She further confirmed that she can lift a gallon of milk, although she was not sure if she could carry a 20-pound sack of potatoes across a room. (R. 44). As such, more than a "mere scintilla" of evidence supports the ALJ's conclusion that Dr. Jennings' opinion is not persuasive.

However, Plaintiff correctly notes that the ALJ failed to address certain instances in the record that arguably support the standing and walking limitations assessed by Dr. Jennings. For example, the record includes medical observation of problems with Plaintiff's left hip and foot, swelling and discoloration in both lower extremities, and diminished left side mobility. (*See* R. 259, 296, 312, 322). The ALJ also incorrectly described the May 20, 2019 note of Dr. Jennings, which indicated leg swelling. (*Compare* R. 23 *with* R. 311).

Thus, the ALJ's assertion that "there was no objective support . . . *anywhere* in the record" for Dr. Jennings' assessment was an overstatement. (R. 19 (emphasis added)). An ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). "Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly

probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

"The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Here, Plaintiff also had the burden to show that her medically determinable impairments prevent her from performing her past work as a customer service representative. *See Lax*, 489 F.3d at 1084; *see also Barker v. Astrue*, 459 F. App'x 732, 741 (10th Cir. 2012) (unpublished) (noting that a "claimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy"). Accordingly, the ALJ's omission of certain evidence from his discussion is not reversible error "unless there is reason to believe that the remand might lead to a different result." *Moua v. Colvin*, 541 F. App'x 794 (10th Cir. 2013) (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).

Having reviewed Dr. Jennings' opinion and the evidence cited in Plaintiff's brief, the Court concludes that the ALJ's failure to specifically address this evidence did not constitute a harmful error warranting remand. Plaintiff's testimony indicates that limitations in sitting, standing, or positional changes are not a salient obstacle to performing her sedentary, past work as a customer service representative. Rather, Plaintiff stated that in her past few attempts at work, she "quit out of frustration" because she felt she could not type fast enough to keep up and because of symptoms of her neuralgia and brain fog— not because of limitations relating to her lower extremities. (R. 37).

A sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. *See* S.S.R. 96-9P, 1996 WL 374185. Dr. Jennings' physical assessment is largely consistent with this exertion level. Where the "ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's [residual functional capacity], the need for express analysis is weakened." *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (quoting *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

The RFC determination departs from Dr. Jennings' sitting/standing/walking limitations only as to two specific limitations—a limitation to standing for 15 minutes at one time, and a need to elevate Plaintiff's leg for 15 minutes every two hours. (R. 374-375). However, the ALJ reasonably found that these were not supported in the record. The VE confirmed that Plaintiff's past relevant work is classified as sedentary. "An ALJ may rely on information supplied by the VE at step four." *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). Specifically, an ALJ is permitted to "quote the VE's testimony approvingly, in support of his own findings at phases two and three of the [step-four] analysis." *Id*. Here, the ALJ reasonably concluded that Plaintiff's past relevant work is consistent with the RFC limitation to sedentary work and appropriately supported his step-four findings with relevant testimony from the VE. (R. 24-25; *see also id*. at 45-46). Accordingly, the Court finds no reversible error in this respect.

14

### B.     Dr. Linde

Plaintiff argues the ALJ erred in his evaluation of the opinion of Susan M. Linde, Ph.D.   Following a psychological CE on November 29, 2018, Dr. Linde opined that Plaintiff "is likely . . . able to understand, concentrate, remember, and communicate like most adults." (R. 19 (citing Exhibit 3F, page 4)). However, she opined that Plaintiff's "panic and difficulty in social situation[sic] cause her difficulty persisting with difficult tasks, interacting with others, and adapting to the demands of a work environment." (R. 289). The ALJ relied on the former part of Dr. Linde's opinion in rejecting Dr. Jennings's opinion that Plaintiff is restricted to simple tasks.  *Id.*

In support, the ALJ cited objective evidence in the record consistent with Dr. Linde's opinion as to Plaintiff's cognitive abilities. For instance, the ALJ cited the October 16, 2018 physical examination by Dr. Jennings where Plaintiff displayed normal mood, affect and behavior.  (R. 18). (citing Exhibit 2F, page 3).   The ALJ also cited the internal CE, where Dr. Vesbianu "found the [Plaintiff] was alert and oriented times 3," she "had normal mentation and thought process," and her "mood, judgement, and affect were all within normal limits."  (R. 19). (citing Exhibit 4F, page 2). The ALJ further found that in "every objective physical examination detailed in the record, [Plaintiff's] psychological condition, mood, affect, mentation, and behavior, were found to be normal, appropriate, alert, cooperative, or oriented."  *Id.* (citations omitted).

Plaintiff alleges the ALJ erred in failing to acknowledge Dr. Linde's findings regarding Plaintiff's impaired performance on the Montreal Cognitive Assessment (MoCA) serial sevens subtraction and abstract reasoning tasks.   The ALJ addressed

15

Plaintiff's performance on the MoCA and noted that she was assessed a normal MoCA score of 28 out of 30.  (R. 20 (citing Exhibit 3F, page 4)).  The ALJ also noted that on the test for auditory recall, Plaintiff's immediate and delayed recall was intact.  *Id.* (citing *Id.* at 3).  The ALJ noted that Plaintiff performed well on a serial (7) subtraction task and across two of the three areas of attention and concentration.[5]  *Id.* (citing *Id.*).  Plaintiff's impaired performance on the serial sevens subtraction and abstract reasoning tasks was accounted for by subtracting two points from the total possible score of 30, resulting in Plaintiff's overall of 28.  (*See* R. 291); *see also* footnote 5, *supra*.  Further, the MoCA scores do not specifically relate to or assess any functional limitations related to employment, which would require consideration by the ALJ when making his RFC determination.

Next, Plaintiff argues the ALJ erred in discounting Dr. Linde's opinion "that panic and difficulty in social situation[s] cause [Plaintiff] difficulty persisting with difficult tasks, interacting with others, and adapting to the demands of a work environment." (R. 20).  The ALJ found this part of Dr. Linde's opinion was less persuasive due to Plaintiff's contradictory statements.  For instance, the ALJ cited Plaintiff's May 20, 2019 report to Dr. Jennings that she "was nervous and anxious and reported anxiety leaving the house,"

---

[5]     Plaintiff's brief correctly notes that the ALJ mischaracterized the MoCA Serial 7 Subtraction task results. (*See* Pl. Br., Doc. 18 at 10). Dr. Linde's report revealed that Plaintiff "performed less well on the Serial 7 Subtraction task, making two error [sic] out of 5 subtraction attempts." (R. 288). However, the error is harmless, because a deduction due to Plaintiff's impairment on the Serial 7 Subtraction task was accounted for by subtracting one point from the total possible score of 30. (R. 291).  Further, Plaintiff's total score of 28 is considered normal when compared to normative data. (R. 289).

but she "had increased her outings from every 6 month[s] to once a month," and that she

"was making herself more social." *Id.* (citing Exhibit 6F, pages 7, 9). The ALJ found those

statements contradicted Plaintiff's report that she "experiences panic attacks when she tries

to leave her house." *Id.* (citing [4]E, page 1). The ALJ further found that the objective

evidence does not support the alleged severity of the Plaintiff's psychological complaints.

*Id.* Plaintiff argues the ALJ's rationale is not persuasive because it is based on only

minimal portions of the evidence due to the ALJ's failure to acknowledge the complaints

she made to her medical providers that are consistent with Dr. Linde's opinion.

Plaintiff asserts that an ability to leave the house once a month is hardly indicative

of a significant capacity for social interaction. Further, Plaintiff contends her statement

about this minor improvement to Dr. Jennings in May 2019 does not actually conflict with

her report seven months earlier in her AFR of panic attacks when she leaves the house,

especially when she made an almost identical statement to Dr. Linde in November 2019 as

well. *Id.* (citing R. 20, 197, 286, 311). Plaintiff asserts the ALJ erred by disregarding her

reports to Dr. Linde and Dr. Vesbianu in late 2018 that she had "lacked the will to live,

needed anxiety medication to go anywhere at all, and that her social phobia prevented her

from going grocery shopping alone." *Id.* (citing R. 20, 286, 288, 294).

Contrary to Plaintiff's argument, the ALJ acknowledged Plaintiff's complaints

regarding her social interaction limitations throughout his decision. The ALJ cited

Plaintiff's May 20, 2019 report to Dr. Jennings that she "was nervous and anxious and

reported anxiety leaving the house," (R. 20). The ALJ noted that Dr. Jennings diagnosed

Plaintiff with moderate anxiety exacerbated by grief over the recent death of her husband.

(R. 18-19).  The ALJ noted that Dr. Vesbianu "assessed agoraphobia with some fear of going out even to do grocery shopping."  (R. 18).  However, the ALJ found the social limitations assessed were a result of Plaintiff's subjective complaints, rather than objective evidence.  Moreover, as discussed *supra*, the ALJ cited objective evidence in the record that he found was not consistent with Plaintiff's subjective complaints.

Lastly, Plaintiff argues the ALJ failed to acknowledge that the social interaction limitations opined by Dr. Linde are similar to the opinion of reviewing state agency psychologist Jason Gunter, Ph.D., which he ultimately rejected in a conclusory statement.  (*See* Pl. Br., Doc. 18, at 10).  Dr. Gunter opined that Plaintiff could only perform simple and detailed one to four step tasks with routine supervision; interact appropriately with the public, coworkers, and supervisors for incidental work purposes; and adapt with some forewarned changes in a usually stable work setting. *Id.* (citing R. 78, 289).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays*, 739 F.3d at 576 (quoting *Clifton,* 79 F.3d at 1009-10).  Here, the ALJ considered the opinion of Dr. Gunter and found that it was not persuasive because it is inconsistent with the substantial evidence of record.  (R. 21).  As such, the ALJ's decision indicates that he weighed the opinions of Dr. Linde and Dr. Gunter and concluded it does not require additional limitations in Plaintiff's RFC.  The ALJ supported this conclusion with reference to specific evidence in the record.  Nothing further is required.

18

Moreover, Dr. Linde's opinion does not assess specific work-related functional limitations. The focus of disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not error if the limitation is not supported by the medical record). Accordingly, once the ALJ reasonably explained why he found Dr. Linde's opinion regarding social situations and persistence with difficulty tasks "less persuasive," he was not required to do more. (R. 20). *See Wall*, 561 F.3d at 1069 (*citing Howard*, 379 F.3d at 947).

## C.    Step Four

Plaintiff challenges the ALJ's finding that her work as a customer service representative constituted past relevant work.  Plaintiff contends there is no substantial evidence that her past work was of sufficient duration to meet the Substantial Gainful Activity (SGA) earnings threshold.[6]  Plaintiff contends that her reported length of employment at each job is not mathematically consistent with her reported wages and hours.[7] (*See* Pl. Br., Doc. 18 at 13) (citing R. 168-169, 191).

---

[6]     *See* https://www.ssa.gov/oact/cola/sga.html.

[7]     Plaintiff's brief provided the following scenario: "Assuming [Plaintiff] worked approximately 173 hours per month (40 hours per week multiplied by 4.33 weeks per month) at $10.00 per hour as she claimed (R. 191), she would have earned $1,730 for each month of work.  As such, where [Plaintiff's] earning records reflected pay of $4,150.62 at Micahtek in 2007, $6,110 and $1,175.09 at HSBC Card Services in 2007 and 2008 respectively, and $2,525.40 at Coca Cola in 2008, such figures would indicate (again assuming pay of $10.00 per hour) that she worked substantially shorter or longer periods at each job than she testified." (*See* Pl. Br., Doc. 18 at 13, fn.7) (citations omitted).

Past relevant work is defined as work that a claimant has done "within the past 15 years, that was substantial gainful activity [SGA], and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1).  Plaintiff testified that she worked as a customer service representative in 2007 for "roughly four to five months" at Micahtek and "about four months" at HSBC Card Services. (R. 35-36).  Plaintiff testified she worked for "maybe a month" at Coca Cola in 2008. (R. 36).  Relying on Plaintiff's testimony, the combined time she worked is approximately nine to ten months, which is more than the three to six months required to learn the job.[8]

Plaintiff argues that her earnings should be averaged over a 12-month period, thus would fall below the SGA amounts.  That argument is contradicted by the agency's regulations, which provides that earnings are averaged over the period of work.  *See* 20 C.F.R. § 404.1574a(a) ("If your work as an employee or as a self-employed person was continuous without significant change in work patterns or earnings, and there has been no change in the [SGA] earnings levels, we will average your earnings over the entire period of work requiring evaluation to determine if you have done substantial gainful activity."). Thus, dividing the eight to nine months Plaintiff testified she worked in 2007 by her earnings record of $10,260.62 for that year, she would have earned either $1,282.58 or $1,140.07 per month in 2007, which is above the SGA threshold amount.  Therefore, the

---

[8]     The VE testified that Plaintiff's past work as a customer service representative was a sedentary job with a SVP level of 4. (R. 45).  Jobs with SVP of 4 take "[o]ver 3 months up to and including 6 months" to learn. *See* DOT, App. C, § II, 1991 WL 688702.

ALJ's findings that Plaintiff's past work as a customer service representative constitutes past relevant work is supported by substantial evidence.

## V.    Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

SO ORDERED this 31st day of March, 2022.

_Christine D. Little_
Christine D. Little
United States Magistrate Judge